## Case No. 2,310.

### CALHOUN v. VECHIO et al.

### [3 Wash. C. C. 165.]¹

Circuit Court, D. Pennsylvania. April Term, 1812.

#### SALES—CAVEAT EMPTOR—WARRANTY.

1. Action to recover the stipulated price of a quantity of looking-glass, which the plaintiff advertised as white glass of a superior quality, and which the defendants purchased, after having particularly examined the same; signing an agreement stating the purchase, and the price to be paid on taking the glass away. On the following day, one of the defendants returned, re-examined the glass, and said it was of inferior quality, and refused to comply with the agreement of the preceding day. The glass was, in fact, of very inferior quality. The court *held*, that the defendant, having examined the glass, and given the agreement to purchase it, he could not afterwards claim to be relieved from his bargain, by the discovery that the quality of the glass was inferior, and that it was not worth the price agreed to be paid for it.

[See Barnard v. Kellogg, 10 Wall. (77 U. S.) 383. reversing Case No. 7,661; Anschutz v. Miller, 20 Fed. 376; Willings v. Consequa, Case No. 17,767.]

2. The statement of the quality of the glass in the advertisement, did not amount to a warranty; inasmuch, as the defendants did not rely upon the advertisement, but on their own judgment, formed after an examination.

[3. The refusal of defendants to take the glass dispensed with the necessity of a tender.]

Action on the case, to recover the stipulated price agreed to be paid by the defendants [John & I. Vechio], for six cases of looking-glass plates. The first count is indebitatus assumpsit, for 9122 dollars, 5 cts., for goods sold and delivered. 2. Quantum valebant. 3. A special count, reciting a colloquium respecting six cases of looking-glass plate, the property of the plaintiff, in which the plaintiff agreed to sell, and to deliver the same to the defendants, and they agreed to purchase and to accept the same, and on delivery thereof, to pay to the plaintiff 9122 dollars, 5 cts.; that the plaintiff was ready, and offered to deliver the said glass, but the defendants refused to accept or pay for the same, whereby, &c. Fourth count like the third, except as to the breach, which states that the plaintiff was ready and willing to deliver, but the defendants fraudulently absconded and hid themselves, to prevent a delivery or offer. Plea, non assumpsit.

It appeared, by the evidence, that the plaintiff, having received from St. Petersburgh a large quantity of looking-glass plates, of various sizes, advertised the same for sale, calling them white glass of superior quality. The defendants being merchants of New-York, and largely engaged in selling looking-glasses and other ornamental articles, seeing this advertisement, came on to Philadelphia to purchase some of the glasses thus adver-

tised. The defendant, John Vechio, requested some of the boxes to be opened, of which he examined a number. He observed that the quality was not good; many, or most of the plates being sandy. The plaintiff answered, that he wished he could make them better,—but that the defendant must judge and decide for himself as to the quality, and might examine as far as he pleased. The defendant proceeded with his examination, which he repeated on different days afterwards. He inquired what would be the amount of six cases which he selected; Nos. 12, 15, 16, 17, 18, and 19. The plaintiff answered, 9122 dollars, or thereabouts, after calculating the amount from an invoice which was shown to the defendant. But the real amount was 9121 dollars, 5 cts. The defendant then agreed to purchase the said six boxes at this latter sum, and signed an agreement, dated the 19th of November, stating that he had purchased the same at that price, to be paid for on taking them away. The defendant, after this agreement was concluded, inquired what was to be done in case any of the plates should be broke. The plaintiff answered, that he would deduct them from the amount. The defendant then proceeded to the examination of the different boxes, in order to ascertain the breakage. One plate was found broken in one box, and was laid aside. Two boxes were found damaged, which the plaintiff agreed to replace by two others, or to deduct them from the bill, or to have the damage appraised. The defendant went away, and returned the next day with a Mr. Natt, to assist him in examining the glass; and at length he went away, declaring that he would not go on with the contract, or take the glass at all. The defendant left Philadelphia, and was overtaken on the road, served with process in this suit, and brought back. He again called at the plaintiff's counting-house, and said he had concluded to take the glass. He again examined the glass for two hours, then went away, and did not again return. The other defendant afterwards came to the plaintiff's counting-house, and asked to see the glass which his partner had purchased, which he examined, and then went away. At the time the defendant went with Natt, he said, after examining the glass, that it was not of good quality, and he would not take it. The plaintiff's clerk asked him if he wished to be off his bargain, to which he replied no, if they would give him good glass. The defendant examined a number of witnesses to prove that this glass was of very inferior quality for the price. Much contradictory evidence was given on this point.

It was contended, by Rawle and Charles J. Ingersoll, for the defendants, that the contract of sale was not closed on the 19th of November, but remained open until the defendant should finish the examination of all

¹ [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

the boxes. which he had not done on that day; since it appears, that it was afterwards continued, and a new stipulation made on the part of the plaintiff, as to broken and damaged glass. Consequently, that indebitatus assumpsit, would not lie on this executory contract; but the plaintiff, if he can recover at all, must do so on the special counts, which are not proved. inasmuch. as no delivery of the glass, or offer to deliver, was made. That the quality of the glass turning out to be different from that mentioned in the advertisement. the defendants were at liberty to rescind the contract of the 19th, at any time before the glass was taken away.

WASHINGTON, Circuit Justice, stopped Mr. Levy, who was about to argue the cause for the plaintiff, observing that this was a *very plain case.* This is a contract of sale, concluded on the 19th of November; as much so, and as binding, as a sale can possibly be. The terms of sale were agreed upon, committed to writing, and signed by the defendant, with as much minuteness as was necessary. The article sold, was a quantity of glass contained in six cases, selected by the defendants, and designated by precise marks. The price was fixed, as also the time of payment. Nothing was left for future adjustment. The examination, which afterwards took place, by the permission of the plaintiff, did not, as was argued, open the contract, but it was for the purpose of ascertaining the quantity of broken and otherwise damaged glass. the value of which, the plaintiff, subsequent to the closing of the sale, agreed to deduct from the 9121 dollars, 5 cts., agreed by the defendants to be paid, by the contract of the 19th of November. And if any thing were wanting, to render this a perfect and complete sale on that day, the plaintiff then apprized the defendants that the six cases of glass were, from the time the agreement was signed, at the risk of the defendants, to which they, by their silence, tacitly assented. The subsequent refusal of the defendants to take the glass dispensed with the necessity of an offer on the part of the plaintiff to deliver it, even if that had been necessary. The glass was, to all intents and purposes, the property of the defendants; and they might have taken it away when they pleased, upon paying, or offering to pay, the price agreed upon.

What, then, is to release the defendants from their purchase? The statement of the quality of the glass, in the plaintiff s advertisement. did not amount to a warranty, inasmuch as the defendants did not rely upon the advertisement, but upon their own judgment, to be formed after an examination. It is natural for the owner of property, and the daily advertisements of real and personal property contain the fullest evidence of the fact, to give a character to what he offers for sale, which, in the judgment of other people, it does not deserve. And if these statements of the partial owner should be converted into warranties, where the purchaser has determined to rely on his own judgment, there are probably few sale's that would stand, if the purchaser should become dissatisfied with his bargain.

Has there been any fraud practised by the plaintiff in this case? Has he concealed,. or misrepresented any thing in relation to the quality of this glass, which he knew to be material and false? For, if this were proved, it would be sufficient to set aside the contract. But nothing of this kind is even pretended. The plaintiff stated the glass to be of superior quality, and possibly, he had been so informed by the consignor, (for, it is to be remarked, that when the advertisement was inserted, the cargo was not landed,) or he may have given it this character without authority, in order to entice purchasers to come forward. But, he knew, at the same time, that no person would be so incautious as to purchase without examination. The defendant, in particular, was requested to examine, and to judge for himself; after he had, on a partial view of a few pieces, expressed his disapprobation of the quality. The examination was then pursued, as long as the defendant thought it necessary; and it was afterwards, that he selected the six boxes, and closed the purchase of them. If he did not choose to open the whole of the boxes, it was a matter in which he alone was concerned; and a difference in the quality of the glass not examined, from that which was, would not authorize him to rescind the bargain. But the fact, from the evidence, seems to be, that there was no such difference.

The defence, then, comes to this; that the defendant has, upon the whole, made an improvident bargain. He has agreed to pay more than the article is worth; and if it appeared, that he has done so to a much greater degree than is proved. it is not competent to this. or any other court, to annul, or even vary. the contract. further than the parties have agreed. The plaintiff is therefore entitled to a verdict, for the principal and interest of his account.

The jury found a verdict for the whole sum claimed; the value of the broken glass having been deducted, and the plaintiff agreeing to deduct from the verdict, the value of the damaged glass.

CALHOUN CO. (WOODWARD v.). See Case No. 18.002.

CALHOUN (WOOSTER v.). See Case No. 18,035.